UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                           CASE NO. 10-20503

v.                                        HONORABLE DENISE PAGE HOOD

CHARLES EARL WATSON,

       Defendant.
                                      /

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING MOTION TO SUPPRESS EVIDENCE (DEFENDANT'S STATEMENTS)

On August 4, 2010, a Complaint was filed against Defendant Charles Earl Watson. An Indictment was filed on August 19, 2010 against Watson alleging: Possession with Intent to Distribute Controlled Substance (cocaine base), 21 U.S.C. § 841(a)(1) (Count I); Possession with Intent to Distribute Controlled Substance (marijuana), 21 U.S.C. § 841(a)(1) (Count II); Possession of Firearm in Furtherance of Drug Trafficking Crime, 18 U.S.C. § 924(c)(1)(A) (Count III); and, Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1) (Count IV). Watson is currently detained.

Watson filed the instant Motion to Suppress on September 13, 2010. A response was filed on October 4, 2010. An evidentiary hearing was held on October 20, 2010. Supplemental briefs were filed by the parties on October 28, 2010 and November 1, 2010. The Court granted in part and denied in part the motion. The items found on Defendant's person are suppressed. The remaining items found pursuant to the search warrant are not suppressed.

The Court heard supplemental testimony and oral arguments as to whether Defendant's statements should be suppressed on December 20, 2010. Testimony was given by Mark Easter of

the Jackson County Sheriff's Department. Easter was involved in the controlled buy executed at 808 Second Street on April 20, 2010 between 4:00 p.m. and 4:25 p.m. After the controlled buy took place, Easter was directed back to the Sheriff's office to prepare a search warrant for 808 Second Street.  En route to prepare the search warrant, Easter was directed back to the area to conduct the traffic stop of a red Ford Expedition.  Mr. Lewis Timothy Earnest, the person identified as the seller in 808 Second Street, along with a woman, had left the Second Street address in this vehicle shortly after the controlled buy.  Easter stopped and conducted the traffic stop a few blocks from 808 Second Street.  Easter's interview with Earnest revealed there was a black male from Detroit still in the residence.  A search of the red Ford Expedition found pre-recorded money used in the controlled buy.  After the traffic stop was completed, Easter returned to the Sheriff's office to prepare a search warrant.  During the time Easter was preparing the search warrant, the officers at the scene of 808 Second Street illegally entered and arrested the Defendant.  Defendant Watson was not questioned at the scene.

The search warrant was signed at 5:55 p.m. Upon his return with the search warrant, Easter participated in the search of the premises. Following the completion of the search, Easter returned to the station. At about 10:15 p.m. he obtained a statement from Defendant Watson. Easter testified that he did not transport Defendant Watson to the station. He met Watson in a room in the booking area where there is a breathalyzer unit. Only Easter and Watson were in the room, which measures 5 feet by 8 feet.  Easter believed Watson had been booked by that time. Easter testified that he read Watson his Miranda rights from a card, but that he did not have Watson sign anything. Easter testified he made no threats or promises to Watson. He testified he did not coerce Watson into making a statement. He testified that Watson did not ask for food or

2

drink, nor did he appear intoxicated, and that Watson stated he had consumed ½ of a ½ pint of alcohol prior to his arrest at 5:50 p.m. Although Easter initially testified he played no tricks on Watson and did not lie to him, Easter did in fact tell Easter about certain items found inside 808 Second Street, that fingerprints were on the gun, and that the Detroit Police Department had been contacted, none of which was truthful. *See Frazier v. Cupp*, 394 U.S. 731 (1969).

At the hearing the Defendant's counsel offered, as an exhibit, the booking card for Defendant Watson, indicating a 17:30 arrest on April 20, 2010, and that Defendant was booked at 2:37 a.m. on April 21, 2010.

The Court hereby incorporates by reference the facts the Court found in its initial opinion on the Motion, in an Order dated December 16, 2010 (Docket No. 29).

The Court found in its previous order that Watson's arrest without a warrant and without probable cause was illegal and that any items found on Watson's person were therefore suppressed. The Court further found that items obtained as a result of the search warrant were not fruit of the poisonous tree. Here, the Court addresses whether Defendant Watson's statements to officer Easter are fruits of the poisonous tree as Defendant argues.[1]

There appears to be no dispute that Watson was given Miranda warnings before he was questioned by Easter. There is no challenge to the voluntariness of Watson's statement. Defendant does not claim he requested and was denied legal counsel. He does not claim he was

---

[1] "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Brown v. Illinois*, 422 U.S. 590, 599 (1975) (internal quotations omitted).

deprived of food or water, nor threatened or coerced. He was lied to, but that is not prohibited. *See Frazier v. Cupp*, 394 U.S. 731 (1969). No Fifth Amendment violations are claimed. Only a Fourth Amendment challenge is raised. Therefore, the question before the Court is whether the statements were obtained by exploitation of the illegal arrest and should be suppressed as "fruit of the poisonous tree." *Brown v. Illinois*, 422 U.S. 590, 599 (1975).

Whether Miranda warnings are sufficient to constitute "intervening events" to purge the original taint of an illegal arrest is part of the analysis of whether a statement is considered fruit of the poisonous tree, and perhaps a threshold question. *Id.* at 602, 604-605. However, the Court must complete the analysis required by *Wong Sun v. U.S.*, 371 U.S. 471 (1963), to determine if the statement is sufficiently a product of free will so as to break the causal connection between the illegal arrest and the confession; sufficiently an act of free will as to purge the primary taint. *Id.* at 602-603.[2]

The Court must also consider, "the temporal proximity of the arrest and the confessions, the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official misconduct..." *Id*. at 64 (citations omitted). The burden of showing admissibility is on the Government.

The Government argues that there is no issue of temporal proximity. Defendant was arrested at 5:30 p.m. and interviewed at 10:15 p.m. Defendant was held five hours before being

---

[2] "The question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered." *Brown*, 422 U.S. at 603.

interviewed. Temporal proximity must be considered in light of the circumstances with which the Court is faced. Defendant was arrested and taken to the station, where he remained while the officers searched the house for evidence of a crime of which they had previous knowledge, the controlled purchase of drugs with Government money by an informant. There is no break in the causal connection, since the officers had previous knowledge of the controlled buy and had anticipated a search warrant for 808 Second Street. Defendant is illegally arrested and held five hours while the officers conduct the search.

The Government further argues that the execution of the search warrant and the discovery of evidence, the drugs and guns, inside the home, breaks the causal connection and purges the taint of the illegal arrest. The Government claims there was then probable cause to arrest and inevitable discovery of the evidence. There were no exigent circumstances that arose causing the officers to arrest Defendant prior to the execution of the search warrant. In this case the execution of the search warrant does not break the causal connection and purge the taint of the illegal arrest of Defendant.

Although the Government claims the acts of the officers were not flagrant and purposeful, this is not supported by the evidence. The officers purposefully entered 808 Second Street without a warrant and arrested Defendant based on slim claims that neighbors would alert Defendant, not an apparent resident of the home, of police action in the neighborhood (the stop of Lewis Timothy Earnest in his vehicle) allowing Defendant the opportunity to flee or destroy evidence. The illegal entry and arrest of Defendant were flagrant. The detention of Defendant until the search is complete is also purposeful–the full intent of the officers was to question him after the search had taken place. In the scheme of the protection afforded by the Fourth

Amendment, there is no purge of the original taint relative to the questioning of Defendant, five hours after his illegal arrest.

The Court finds that Defendant's statements after his illegal arrest are suppressed as fruit of the poisonous tree.

**IT IS SO ORDERED.**


Dated: January 7, 2011        S/Denise Page Hood
                                                DENISE PAGE HOOD
                                                UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 7, 2011, by electronic and/or ordinary mail.


                                                S/Julie Owens
                                                Case Manager, (313) 234-5160